JAMES ALEXANDER Ex'r. *v.* JOSEPH WALLACE *et al.*

1. WILLS. *Construction.* A will provided as follows: "I direct that the remainder of my estate, both real and personal, be divided among my heirs according to the laws of the State of Tennessee now in force, none preferred, none discriminated against." Held, that the heirs of the testator would take his land as provided by the statute of descents, and his next of kin would take the personalty as prescribed by the statute of distributions.

2. SAME. *Executor. Power to sell land.* A testator by his will appointed an executor "to take charge of my entire estate, and execute this, my last will and testament, and to do so without any bond, or any liability for error and defects either to my heirs or to any court, relying on his integrity and judgment entirely." Held, that the clause did not convert the testator's realty into personalty, or give the executor any authority to sell the land.

## FROM SUMNER.

Appeal from the Chancery Court at Gallatin. GEO. E. SEAY, Ch.

J. J. TURNER for complainant.

S. F. WILSON for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed by the executors of the last will and testament of James Wallace, deceased, against the heirs and distributees, who are also devisees and legatees, for a construction of the will. The testator died in October, 1881, about eighty-three years of age, without wife or child. He was the youngest of twelve chil-

dren, and had survived all of his brothers and sisters, each of whom left children surviving. Many of these children died before the testator leaving children, and some of these latter children also died before the testator, leaving children. The descendants of his brothers and sisters are the heirs and distributees of the testator. They are numerous, and reside in various states and territories. The testator owned at his death over nine hundred acres of land in this State, and about eighteen hundred and eighty acres in the State of Texas. He had a large personal estate. The will was written by one of the subscribing witnesses, a man of age, and of fine business capacity, a cashier of a bank for a number of years, and in the habit of drawing up legal instruments, but not a lawyer.

The testator provides by his will for the payment of his debts and for certain old servants who are named. His will then proceeds as follows:

"Fourth. I direct that the remainder of my estate, both real and personal, be divided among my heirs according to the laws of the State of Tennessee now in force, none preferred, none discriminated against.

Fifth. I desire and direct that no portion of my estate shall be subject to any supervision of, or liability to any court whatever.

Sixth. I hereby appoint my long tried and faithful friend, James Alexander, my executor, to take charge of my entire estate, and execute this, my last will and testament, and to do so without any bond, or any liability for errors and defects, either to my heirs or to any court, relying upon his integrity and judgment entirely."

It is conceded that the last provision in relation to the non-liability of the executor for any abuse of, or default in the trust conferred upon him, is contrary to public policy, and of no avail. And it must be admitted that the testator's direction that no portion of his estate shall be subject to the supervision of the courts, has proved an ignominious failure. The executor has himself come into court, and brought all parties interested in the estate with him. What portion of the estate will go to the officers of the court remains to be seen.

The impression made upon the mind by the language of the fourth clause of the will is, what the facts render probable, that the testator had no choice among the numerous and scattered descendants of his brothers and sisters, and was willing that they should take his property as the law would divide it. The words "according to the laws of the State of Tennessee," would, in this view, not only ascertain the persons to take, but determine the quantum of estate or interest each of those persons should receive. The testator, being himself indifferent, leaves all to the law.

The "heirs" of the testator, by the laws in force at his death, to inherit the realty, were the issue of his deceased brothers and sisters, such issue in each descending line taking by way of representation of a deceased parent, and therefore *per stirpes*, without any limit to the representation: Code, secs. 2420, 2421; The Miller wills, 2 Lea, 54. The distributees of the personal estate, by the same law, were the children of the brothers and sisters, to the exclusion of the re-

moter descendants, there being no representation among collaterals in the distribution of personalty after brother's and sister's children: Code, secs. 2429, 2430; *Penniman* v. *Francisco,* 1 Heisk., 511. And these children would take *per stirpes.* The result would be, if the testator's property be divided among his heirs and distributees according to the laws of the State in force at the testator's death, that the heirs would take the realty in the descending line, without limitation, by way of representation and *per stirpes,* and the distributees to take the personalty, would be the children of brothers and sisters to the exclusion of the remoter descendants.

In view of this inequality of benefit among the descendants of the same *stirpes,* able and exhaustive arguments have been presented in support of a different construction of the will. In the first place, it is contended that the word "heirs," as used in the fourth clause of the will, must be taken in its strict technical sense, as designating the objects of testator's bounty, and that the entire estate, real and personal, will go to the same persons. Like all other legal terms the word "heir" or "heirs," when unexplained and uncontrolled by the context, is usually interpreted according to its strict and technical import, in which sense it designates the person or persons appointed by law to succeed to the real estate in case of intestacy: 2 Jar. on Wills, 61 (5th Am. ed). But an intention actually expressed, or to be gathered from the language used, will prevail over the technical meaning of the word. Where a mixed fund of realty and personalty

is given to the heir, less difficulty has been found in treating the person answering the description as taking both funds: *DeBeauvoir* v. *DeBeauvoir*, 3 H. L. Cas., 524, 558; *Gwynne* v. *Muddock*, 14 Ves., 488. But, as said by the great judge, Sir Wm. Grant, who delivered the opinion in the last of these cases, "it is always a question of intention what the testator means by the use of such description." And the state of the authorities is such that the vice-chancellor of England felt constrained to say in a comparatively recent case: "I cannot assent to such a proposition of law as that where real and personal estate are blended, the personalty goes as the realty. Such a proposition is, I think, bad law, and authority is the other way:" *Herrick* v. *Franklin*, L. R. 6 Eq., 594. In a still more recent case, where a direction to divide a sum of money "amongst the heirs of my late brother," was held to give the money to the next of kin of the brother according to the statute of distributions, another vice-chancellor said: "In the midst of the 'confusion worse confounded' which exists among the authorities on this subject, I must endeavor to put such a construction upon the language of this will as the general sense of the instrument requires:" *In re* Steevens' Trusts, L. R. 15 Eq., 110.

In this State we have held that the word "heirs" is flexible, and may mean heir at law or next of kin, according to the nature of the property given, and the construction can be applied to a mixed devise *reddendo singula singulis*: *Ward* v. *Saunders*, 3 Sneed, 337; *Ingram* v. *Smith*, 1 Head, 412, 426; *Gosling* v. *Cald-*

*well,* 1 Lea, 454. The weight of authority is in favor of the flexible character of the word: *Gittings* v. *McDermott,* 2 M. & K., 69; *Vaux* v. *Henderson,* 1 J. & W., 388 *n*; *Crown* v *Henesey,* 4 Hawks., 392; *Ferguson* v *Stewart,* 14 Ohio, 140; *Clark* v *Lynch,* 46 Barb., 68; *Evans* v *Godbold,* 6 Rich. Eq., 26; *Morton* v *Barrett,* 22 Me., 257.

It is next contended that the will provides for equal division among the heirs. If the testator has introduced into the gift expressions requiring an equality of distribution, the statutory mode is in general excluded, and the class of heirs or devisees designated take *per capita: Puryear* v. *Edmondson,* 4 Heisk., 43; *Parrish* v. *Groomes,* 1 Tenn. Ch., 581; *Low* v. *Smith,* 25 L. J. Ch., 293. But this, too, is controlled by the intention of the testator, and if that intention leaves it doubtful in what proportions the class is to take, and *a fortiori,* if it expresses or fairly implies the contrary, the rule of equality will not prevail: *Harris' Estate,* 74 Penn. St., 452. And if it can be fairly gathered from the will that the testator intended that his property should go according to the statutes of descent and distribution, even the express use of the words "equally divided," or "share and share alike," will not change the result: *Fielder* v. *Ashworth,* L. R. 20 Eq., 410; *Holloway* v. *Radcliffe,* 23 Beav., 163; *Booth* v. *Vicars,* 1 Coll. C. C., 6; *Flinn* v. *Jinkins,* 1 Coll. C. C., 365; *King* v. *Savage,* 121 Mass., 303. In *Holloway* v. *Radcliffe, ut supra,* the division was to be: "Equally amongst my legal personal representatives, in such and the like manner as if the same had been to be paid

under the statute of distributions," and the same point
was made as in the case now before us.   "It is con-
tended," says the Master of Rolls," "that the true
reading is to refer to the statute to ascertain who are
the persons to take under the description of 'legal
representatives,' and nothing more, and thereby give
effect to the words " equally amongst."   It will be
seen that though the testator gave this moiety equally
between the persons so ascertained, still the statute of
distribution is referred to, not only for the purpose of
pointing out who are the persons to take, but also,
for the purpose of pointing out the manner in which
they are to take."   In *Fielder* v. *Ashworth, ut supra,*
the words of the will were: "to distribute the resi-
due to my relatives, share and share alike, as the law
directs."   Says the vice-chancellor:   "What does he
mean by this?   Does he mean that the relatives are to
take share and share alike, or does he mean them to
take as the law directs under the statute of distribu-
tions?   I think that the intention of the testator was
that, not having made up his mind how to divide his
property, and probably not knowing exactly how it
would go under the statute of distributions, he thought
it better to leave it entirely to the law, having con-
fidence that it would then be divided in the most
proper manner.   The only mode of effecting this ob-
ject is to disregard the words 'share and share alike,'
and order the property to be divided as the law di-
rects—that is, according to the statute of distributions."

The obvious intention of the testator in the clause
in the will now before us, was to refer to the laws

of the State of Tennessee now in force, not only for the purpose of pointing out the persons who are to take, but also for the purpose of pointing out the manner in which they are to take. The testator, not having made up his mind how to divide his property, and probably not knowing exactly how it would go under the statutes, thought it better to leave it entirely to the law. And he has not hampered his general intent by any such inconsistent and clearly expressed phrases as those existing in the two English cases cited. The only additional words used by him are: "None preferred, none discriminated against." Precisely what was meant by these words is doubtful. But probably the testator only intended to say, no matter where my heirs may be, nor who they are, let them take the share of my estate which the law gives them. At any rate, they are not directly inconsistent with the residue of the clause, and cannot control its plain meaning.

There is no ground in the language of the will for the contention of the executor that he is authorized to sell the land of the estate. There is no conveyance of the land to him, nor any authority given to him to sell. The general power conferred upon the executor by the sixth clause is only such as would belong to him as executor, to take charge of the estate and execute the will. Whatever may have been the intention of the testator, the actual language used does not admit of any other construction. There is not the slightest indication of an intent to convert the land into money to be distributed as such.

No question of advancement can be raised under this will. For, whether the heirs and next of kin take under this will, or by law, the interest being the same, the whole estate is disposed of, rendering equality impossible. The testator had made no advancements in his life time.

There is no error in the chancellor's decree, and it must be affirmed. The costs will be paid out of the estate, and the cause remanded.