(No. 12910.—Reversed and remanded.)

JOSEPHINE HAMMOND, Appellant, *vs.* ADDIE MYERS *et al.*
Appellees.

*Opinion filed February 18, 1920—Rehearing denied April 7, 1920.*

WILLS—*when words "nearest akin" mean nearest blood relations.* Where a testator devises land to his son for life and provides that at the son's death the property shall "revert to his nearest akin," the words "nearest akin" are intended for "nearest of kin" and mean the nearest blood relations of the life tenant to the exclusion of more distant relations, and do not mean legal heirs according to the Statute of Descent. (*Chicago and Alton Railroad Co.* v. *Shannon,* 43 Ill. 338, distinguished.)

APPEAL from the Circuit Court of Edgar county; the Hon. JOHN H. MARSHALL, Judge, presiding.

WALTER S. LAMON, and JOSEPH E. DYAS, for appellant.

J. K. LAUHER, and PAUL B. LAUHER, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The question presented by this appeal is the construction to be given the words "nearest akin," in the following paragraph of the will of John Love, deceased: "I give, devise and bequeath unto my son Robert Linton Love forty (40) acres of land, * * * to have and to hold the same during his natural life, for his support and maintenance during his natural life. After his death to revert to his nearest akin." The will was executed December 6, 1886, the testator died February 19, 1888, and the will was admitted to probate March 9, 1888. February 9, 1918, Robert Linton Love, son of the testator and devisee under the will, died, leaving him surviving no widow, parent or child but leaving him surviving a sister, a brother, seven nieces and five nephews. May 3, 1918, Josephine Hammond, surviv-

ing sister of Robert Linton Love, filed her bill seeking partition of the real estate described in the will and making her brother and her nieces and nephews defendants. By her bill she claims to be the owner of an undivided half of said real estate as tenant in common with her brother and that the nieces and nephews of Robert Linton Love have no interest in the premises. The defendants answered the bill, admitting all its allegations except that with reference to the interests of the parties. Defendants filed a cross-bill, setting forth the interests of the parties and the relation of the parties to Robert Linton Love, deceased, as follows: Charles M. Love, brother, Josephine Hammond, sister, and Addie Myers, only child of a deceased sister, each 60/360 of the premises; Howard Wallace and Bessie Bonwell, children of a deceased son of a deceased sister, each 30/360; Clyde Taylor, Emma Kester, Ella Richmond and William H. Taylor, children of a deceased sister, each 15/360; and Horace G. Phillips, Elizabeth Lemmons, Belle Connor, Anna Jones and Charles J. Phillips, children of a deceased sister, each 12/360. The cause was heard upon the bill, cross-bill and answers, and a decree entered finding that the interests of the parties in said real estate were correctly set forth in the cross-bill and ordering partition of said premises accordingly. From this decree appellant prayed and perfected her appeal.

The evidence shows that at the time this will was executed the living heirs of the testator were two sons, four daughters and five grandchildren, children of a deceased daughter, Margaret L. Phillips. Subsequent to the making of the will and subsequent to the death of the testator but prior to the death of Robert Linton Love, the life tenant, three daughters of the testator, Belle Myers, Harriet Taylor and Elizabeth Wallace, died, leaving surviving them children, who, with the children of Margaret Phillips, claim to be entitled to an interest in the land here in question, as set forth in the cross-bill. In 1886 the testator, John Love,

had some personal property and 180 acres of land. He disposed of 40 acres of this land by will to take care of his son Robert Linton Love, who was not mentally capable of caring for himself. All of the remainder of his property passed intestate and was sold by the administrator of his estate. The only land held in common by the parties to this suit is the 40 acres here in question.

As we have said, the only question presented here is whether the words "nearest akin," in the will, mean nearest blood relations or include all those relations who would take under the Statute of Distributions. The terms "nearest of kin," "next of kin," and similar phrases used in wills, have been the subject of serious consideration by the courts of last resort of this and other countries. Redfield in his work on wills (vol. 2,—2d ed.—p. 75,) says: "Bequests to the next of kin of the testator or of some person named have received somewhat different constructions in the early cases and different views have been maintained by different judges of great learning and ability. On the one hand the terms were held to include those, only, who would take under the Statute of Distributions. Of this opinion were Mr. Justice Buller, Lord Kenyon and Sir John Leach. And on the other hand were Lord Thurlow, Lord Eldon, Sir William Grant, and the decision of Sir T. Plumer in *Brandon* v. *Brandon,* who all maintain that the terms 'next of kin' apply to those nearest in kindred to the propositus and exclude all of more remote degree. The question came before the court in *Elmsley* v. *Young,* and at the rolls it was held that the words 'next of kin,' used *simpliciter* and without explanatory context, must be taken to mean next of kin according to the Statute of Distributions, but upon appeal before the Lords Commissioners the judgment upon this point was reversed and the cases very extensively reviewed by their lordships. It was here held that the words 'next of kin' must be construed to mean, when used *simpliciter,* nearest of kin; and so a brother of the propositus will take

the whole bequest, to the exclusion of the children of a
deceased brother or sister. This subject was discussed at
length before the House of Lords in *Withy* v. *Mangles,* and
the conclusion reached that *Elmsley* v. *Young* must be re-
garded as the settled law in regard to this point. * * *
Lord Cottenham said the term 'next of kin,' under the Stat-
ute of Distributions, 'had been inaccurately used, since the
statute carefully avoided using any such form of expression,
without qualification, allowing the representation of those
who had deceased of the nearest kindred, unless more re-
mote than brothers' and sisters' children. His lordship
maintained that the term 'next of kin' had acquired no such
popular import as to include those who would take under
the Statute of Distributions in case of intestacy." Thomp-
son in his work on wills (sec. 170) says: "The term 'next
of kin' is limited in legal meaning, as in common use, to
blood relations. * * * Under a gift to 'next of kin' a
brother or sister will take to the exclusion of the children
of a deceased brother or sister. The term does not mean
all those who would take under the Statute of Distributions.
It signifies those who stand in the nearest relationship to
the intestate according to the rules of the civil law for
computing degrees of kinship." Page in his work on wills
(sec. 521) says: "The words 'next of kin' do not, of
themselves, impart *succession ab intestato,* and, taken alone,
mean nothing more than nearest blood relations; and un-
less there is something more in the will indicating that the
testator intended statutory next of kin or that the prop-
erty should be distributed as intestate property, the words
must have their customary meaning. The words 'next of
kin,' in a will, mean the nearest blood relations, and not all
those who would take under the Statute of Distributions.
Thus, 'next of kin' means a brother in preference to neph-
ews, sons of a deceased brother." (See, also, 2 Jarman on
Wills, 644.) The rule above stated is supported by the
courts of last resort in this country. *Swazey* v. *Jaques,* 144

Mass. 135, 10 N. E. 758; *Leonard* v. *Haworth,* 171 Mass. 496, 51 N. E. 7; *Locke* v. *Locke,* 45 N. J. Eq. 97, 16 Atl. 49; *Galloway* v. *Babb,* 77 N. H. 259, 90 Atl. 968; *DeGraffenreid* v. *Iowa Land and Trust Co.* 20 Okla. 687, 95 Pac. 624; *Morse* v. *White,* (Mich.) 148 N. W. 970; *Jones* v. *Parsons,* (Iowa,) 166 N. W. 707; *Smith* v. *Egan,* 258 Mo. 569, 167 S. W. 971.

While this court has never passed upon the precise question here presented, the courts which we have cited have given the question careful and able consideration, and we see no reason why the rule established with such uniformity should not be adopted as the rule to be followed in this State. The meaning given the term "next of kin" in *Chicago and Alton Railroad Co.* v. *Shannon,* 43 Ill. 338, furnishes no guide to a determination of the question now before us, for the reason that the phrase as there used was a technical legal phrase in a statute, and we held it to have been used by the legislature in its technical sense.

It follows, therefore, that the chancellor erred in ordering distribution among the legal heirs of the deceased in accordance with the Statute of Descent. The term "nearest akin" must be held to mean nearest blood relation. Manifestly, a sister and a brother are nearer blood relations than a niece or a nephew, and therefore the prayer of the original bill should have been granted and partition ordered between the appellant, Josephine Hammond, and the appellee Charles M. Love.

The decree is reversed and the cause is remanded to the circuit court of Edgar county for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*