WHITE *et al. v.* KANE *et al.*

(*Nashville,* December Term, 1941.)

Opinion filed February 28, 1942.

W. E. Norvell, Jr., Bass, Berry & Sims, and F. M. Bass, Guardian *ad litem*, all of Nashville, for appellants.

W. P. Cooper, of Nashville, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainants are four children of Mrs. Annie F. Kane, deceased, and the defendants are her grandchildren, and certain parties interested as proposed purchasers in a declaration decreeing the right of complainants to sell and convey the land involved.

In December, 1932, Mrs. Anna Clare Kane Thompson, owner of the land described herein, the title to which is involved, executed her will devising to her mother, Annie F. Kane, a one-half undivided interest therein. The mother-devisee died prior to the testatrix. Complainants are the three brothers and one sister of the testatrix who claim the land devised by the will of their sister by virtue of and pursuant to the provisions of Code, Section 8134, which is as follows:

"Whenever a devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survives the testator, said issue shall take the estate devised or bequeathed, *as the devisee or legatee would have done, had he survived the testator,* unless a different disposition thereof is made or required by the will."

The bill shows that complainants have contracted to sell and convey their interest in the land described, and their right to convey being questioned, they seek a declaration of their rights in the premises.

We have italicized what appears to be language in the Code Section quoted particularly bearing on the question presented. The devisee, Mrs. Kane, had she not died before the testatrix, would have taken in a representative capacity, as a purchaser would take, with absolute power of disposition. Her children would have taken no interest.

Now the statute provides that the devisee having died before the testatrix, the issue of the devisee shall take as the devisee herself would have taken, that is, in a like representative capacity. Who constitute the "issue" of the devisee in the sense of the term as employed in this statute?

The learned Chancellor held that "issue" as here used is to be construed in the sense of descending heirs, as meaning that the children alive at the time of distribution are to take equally, to the exclusion of remote descendants, unless the latter are issue of a deceased child, in which case they would take this child's share as representing their parents. In other words, the distribution in *per stirpes*, rather than *per capita*. The opinion of the Chancellor so well reasons the matter, that we adopt it, as follows:

"As will be seen from the above stated facts, the mother of the testatrix was a devisee under her daughter's will, and having pre-deceased her daughter, her interest in the daughter's estate passed under the lapsed legacy statute which was carried into the 1932 Code as Section 8134.

"The only question before the Court is the construction of the word 'issue' as contained in said Section 8134 of the Code, which was enacted in 1851, and reads as follows:

" '8134 . . . Devise or legacy not to lapse—Whenever a devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survives the testator, said issue shall take the estate devised or bequeathed, as the devisee or legatee would have done, had he survived the testator, unless a different disposition thereof is made or required by the will.'

"The word 'issue' used in the statute in its literal meaning, includes all persons who have descended from a common ancestor, and would, therefore, imply a *per capita* distribution, but the courts have very widely and generally expressed a strong inclination to construe the word wherever possible, as intending a *per stirpes* and not a *per capita* devolution.

"Among the Tennessee cases are: *Farley* v. *Farley,* 121 Tenn., 324-327 [115 S. W., 921]; *Lee* v. *Villines,* 129 Tenn., 625 [167 S. W., 1117]; *Stewart* v. *Drake,* 1 Higgins (1 Tenn. Civ. App.), 332, 337; and *Lea* v. *Lea,* 145 Tenn., 693, 701 [703, 237 S. W., 59, 62].

"Thus, in the Lea case the Court recognized and commented on the liberal meaning of the word 'issue,' but went on to quote a New York case [*Matter of Farmers' Loan & Trust Co.,* 213 N. Y., 168, 107 N. E., 340, 2 A. L. R., 910], declaring that this presumed meaning 'yields to "a very faint glimpse of a different intention."' And our Supreme Court added ([145 Tenn., at] page 703 [237 S. W., at page 62]):

" 'This "faint glimpse" or "slight indication" doctrine is accepted by most of the courts, and while it is the exception to the rule . . . the exception to the rule seems to have a more general application than the rule.'

"So, also, our Court in *Ridley* v. *McPherson,* 100 Tenn., 402, 405 [43 S. W., 772, 773], says that Mr. Redfield in his work on Wills, Vol. II, page 363, expresses the opinion—'that not one grantor in a thousand would suppose that by using such a word he would be dividing up his estate among all his descendants who might be living at the time of distribution, in such manner as to permit two or three generations—parents and their children and

grandchildren—to share concurrently and *per capita,* equally, as between themselves.'

■ "As said in the Lea case, the courts generally seek for any indication, however slight, to support a *per stirpes* interpretation of the word 'issue'—on the ground that this interpretation would not only be in conformity with the long established statutory rules of descent and distribution, but with the presumed intention of the grantor or testator.

■ "But that is where the word 'issue' is used in deeds or wills, while here, we are dealing with the word in a statute, and accordingly, we are here to seek the legislative intent. *Trotter* v. *State,* 158 Tenn., 264 [12 S. W. (2d), 951]; *Sparkman-Thompson, Inc.,* v. *Chandler,* 162 Tenn., 614 [39 S. W. (2d), 741].

■ "And there is a fundamental rule that a statute is to be construed, or interpreted, with reference to its intended purpose. *Morrison* v. *Gower,* 154 Tenn., 624 [288 S. W., 731]; *Hunter* v. *Harrison,* 154 Tenn., [590], 598 [288 S. W., 355].; *Riggins* v. *Tyler,* 134 Tenn., 577 [184 S. W., 860].

■ ■ "Under the common law a devise or legacy lapses where the devisee or legatee dies before the testator. (*Dixon* v. *Cooper,* 88 Tenn., 177, 12 S. W., 445; *Morton* v. *Morton,* 32 Tenn. (2 Swan), 318.) And the primary purpose of these acts was to prevent this lapse of the devise or legacy, and to save it to the representative of the deceased devisee.

"The idea was, inasmuch as an outright gift must have been intended by the testator, to be at the complete disposition of the devisee or legatee, and therefore subject to descend to his issue, if he had any, the gift ought not to lapse in the event of the devisee's or legatee's death be-

fore that of the testator, but ought to be saved to his issue, that is, to his representatives in blood.

"The word 'issue' was the appropriate word to use for this purpose, because it intended all of those in direct descent from the testator. If there were any such, the gift was not to lapse. And having thus saved the devise or legacy, the purpose of the legislature was accomplished.

"It is not reasonable to infer that the legislature intended, under cover of a statute to save devises or legacies from lapsing, to change, and in a radical way, the established rules of descent and distribution.

"There was a reason, and a sound one, for saving the devise or legacy to the donee's family, for, as pointed out above, it would be in accordance with the testator's intention that an outright gift should be subject to descent from the donee to his heirs and distributees.

"But there is no reason at all to suppose that the testator would have intended, or that the legislature intended, that the gift so saved to the family, should not descend according to the laws of descent and distribution.

"There was another statute for the same purpose which was left out of the 1932 Code. It was enacted in 1841 and was included in Shannon's Code as Section 4171, and was as follows:

"'4171 . . . Where any person to whom an estate, real or personal, is devised or bequeathed, dies before the testator, leaving issue that shall be living at the death of the testator, the devise or legacy shall not lapse, but shall take effect, as if the death of the devisee or legatee had happened immediately after the death of the testator; and the real estate devised, in such case, shall be vested in the issue of such deceased devisee, in the same manner

as it would have vested in the original devisee, unless a contrary intention shall appear in the will.'

"It is suggested that the word 'issue' in this statute is shown by the language of the statute to have intended a *per stirpes* descent, and that the omission of this statute from the 1932 Code compels a *per capita* interpretation.

"The Court is of the opinion that the two statutes, while differently written, are identical in meaning. Both of them declare that the legacy or devise shall go to the 'issue' of the original donee, so that it seems unreasonable to infer that the word 'issue' in the one statute meant *per stirpes* and in the other *per capita*. However, the fact remains that the two statutes seem to have stood side by side for more than 75 years, and that all of that time—as was agreed by both sides in the argument of the case—the rule in this State, as recognized by both bench and bar, was that the gift was to be saved to the donee's descendants *per stirpes*.

"The language of Section 4171 (Shannon's Code) that the devise shall vest in the issue of the deceased devisee 'as if the death of the devisee . . . had happened immediately *after the death of the testator*,' seems to express the same meaning as the language in Section 8134 of the 1932 Code above quoted, that 'said issue shall take the estate devised . . . as the devisee . . . would have done, *had he survived the testator*.'

"Certainly, the similarity here is too great, and the difference too involved and obscure, to justify the conclusion that these clauses were intended to have opposite meanings.

"The Court on the whole is satisfied with the conclusion that the word 'issue' was used by the legislature

in order to express its purpose of saving the gift, if there were any direct descendants of the donee, and not with any intention of declaring a different rule of inheritance in the case of gifts so saved.

"For the foregoing reasons, the Court is of the opinion that the word 'issue,' in Section 8134 of the 1932 Code, means that such issue take *per stirpes* and not *per capita.*"

The conclusion thus reached by the Chancellor, and which we approve and adopt, is supported by the reasoning and authorities reviewed in the opinion of Mr. Justice McKINNEY, in *Lea* v. *Lea,* 145 Tenn., 693, 695, 237 S. W., 59, to which reference is made.

Affirmed.