ANNIE K. FARISS et al., Petitioners,

*v.*

BRY-BLOCK COMPANY et al., Respondents.

ANNIE K. FARISS et al., Petitioners,

*v.*

J. ALBERT KIMBROUGH et al., Respondents.

(*Jackson,* April Term, 1961.)

Opinion filed May 5, 1961.

JOHN D. MARTIN, JR., JOHN COSTEN, S. SHEPHERD TATE, Memphis, MARTIN, TATE & MORROW, Memphis, of counsel, for Annie K. Fariss, Blanche K. Kopkin, Alma and Buckley Kimbrough.

LEWIS R. DONELSON, III, DONALD A. MALMO, Memphis, DONELSON & ADAMS, Memphis, of counsel for J. Albert Kimbrough, Mabel K. Gregory, Sophia K. Sledge, Sallie K. Trobaugh, Pettus K. Jamison, and Lydia J. K. Simmons.

WILS DAVIS, EARL P. DAVIS, Memphis, DAVIS & DAVIS, Memphis, of counsel, for Jerdone and Harriet K. Davis and Franklin S. Kimbrough.

E. W. HALE, JR., RIVES MANKER, Memphis, for E. W. Hale, Jr., Alberta H. Lyle, C. Edmonds Allen and Lydia Ann Long.

J. LESTER CRAIN, JR., Memphis, for Emma K. de Montluzin, Edna K. Crain and William F. Kimbrough.

J. S. ALLEN, J. S. McCADDEN, BENJAMIN GOODMAN, Memphis, ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, of counsel, for Bry-Block Co.

Mr. Justice Swepston delivered the opinion of the Court.

We granted certiorari in this case because of the importance of the question involved as well as by reason of the wide divergence in the views taken by the Chancellor and the Court of Appeals.

These litigations involve the construction of the words "next of kin" as used in Item III of the last will and testament of Mrs. Mary Monroe Kimbrough, who died in the year 1919. The entire will is attached hereto as Exhibit A.

The petitioners are eight nieces and nephews, who contend that "next of kin", as used in the will, means nearest in blood relationship as held by the Chancellor; it is the contention in behalf of Bry-Block Company, et al., that the "next of kin" is to be interpreted as meaning "next of kin" under the Tennessee statute of distribution, T.C.A. sec. 31-101 et seq.; it is the contention of J. Albert Kimbrough, et al., great nieces and nephews, that the phrase should be construed to mean "heirs", as held by the Court of Appeals. Only real estate is involved in Item III.

The Chancellor held that the will was obviously drawn by a lawyer who used technical language and that the expression "next of kin" should be given its "technical"

construction, which is the nearest in blood to the testatrix; as a result of which, as will appear in a moment, the eight nieces and nephews of the testatrix took per capita the real estate to the exclusion of the great nieces and nephews. The Chancellor also heard parol testimony regarding the general situation of the testatrix and her family connections at the time the will was executed, but he considered that the testimony introduced could not control the issues to be determined. In this connection he found that during her lifetime the testatrix, who was herself of Kimbrough ancestry, had close and affectionate relations with the family of her husband, which relations were closer and more affectionate with her brother-in-law, Albert K. Kimbrough, Sr., and his children and grandchildren, than with her other brother-in-law, William F. Kimbrough, Sr., and his family.

The Court of Appeals reversed the Chancellor and held that the phrase "next of kin" was to be construed to mean "heirs", as a result of which the grand nieces would be entitled to share in the inheritance, the details of which need not at this point be gone into.

■ The Court of Appeals, while recognizing the rule that ordinarily extrinsic evidence is not admissible for the purpose of showing the intention of the testator, and that such intention must be gathered from the four corners of the will, considered the extrinsic evidence consisting of the situation of the testatrix and her family relationships at the time of making of the will and reached the conclusion that the result reached by the Chancellor was contrary to the intention of the testatrix, i. e., to eliminate the great nieces and nephews and that such result was in the opinion of that Court unthinkable and that she could not have intended such result.

The Court of Appeals was also of opinion that since the property being disposed of was exclusively real estate, the words ''next of kin'' should be construed to mean ''heirs''. It stated that there was no case on all fours in this State but that since a number of Tennessee cases have held that where the words ''heirs'' or ''heirs at law'' are used in a will with reference to personal property, they should be construed as meaning ''next of kin'', the converse should be true so that ''next of kin'' would be construed to be ''heirs''.

The Court of Appeals was also of opinion that the Chancellor was in error in finding that the will was drafted by a lawyer, because the identity of the draftsman was not shown by the evidence; also that Court seemed to give appreciable probative value to the fact that no lawyer witnessed the execution of the will but instead the three witnesses were friends and neighbors.

There was not, however, any evidence of a custom in the community that the lawyer draftsman be a witness to the will and we can not take judicial notice of any such custom, because there is none.

These holdlings of the Court of Appeals are all challenged by the three assignments of error filed in behalf of petitioners.

Probably at this point it would tend to clarity to recite the following family connections and circumstances. This will, as appears on the face thereof, was executed in the year 1918. The testatrix died survived by her husband, John F. Kimbrough, Sr., who died in 1927. Two children survived her, Virginia K. Conaway, who died in 1925, without issue, and who was 25 years old when the will was executed, and John F. Kimbrough, Jr., who died in 1959,

without issue, and who was 23 years old when the will was executed; a third child died in infancy in 1896.

John F. Kimbrough, Sr., had one brother named William F. Kimbrough, Sr., who died in 1931, and his seven children, the nieces and nephews of the testatrix, survived John F. Kimbrough, Jr., and are all of the petitioners herein except one.

John F. Kimbrough, Sr., had another brother who survived the testatrix, who was Albert G. Kimbrough, Sr., who died in 1934. He had five children but only one of them, Maria K. Bacon, survived John F. Kimbrough, Jr., but the other four children each left children who are the great nieces and nephews of the testatrix.

We take it as being a settled rule that if the intention of the testator can be gathered from within the four corners of the will itself, extrinsic evidence can not be used to create an ambiguity and to be used as a basis for a finding that is contrary to the intention to be gathered from within the four corners of the will. A casual inspection of this will discloses that it was drawn by a draftsman who was highly skilled in the use of technical legal language and in the meaning thereof. The Chancellor concluded that it was drawn by a lawyer, but the Court of Appeals reversed on the point because it said there was no evidence to support such finding, apparently relying upon the reasons stated, supra. We think that the will was drawn either by a lawyer, or by one who missed a golden opportunity to have been a lawyer and that the Court of Appeals was not warranted in reversing the Chancellor on this point because the evidence does not preponderate against the correctness of the Chancellor's findings. T. C.A. sec. 27-303.

488

■ There are at least four cases in Tennessee holding that where a will is drafted by a lawyer technical words will be given a technical meaning. *Burton v. Kinney,* 191 Tenn. 1, 231 S.W.2d 356, 19 A.L.R.2d 366; *Third Nat. Bank in Nashville v. Noel,* 183 Tenn. 349, 192 S.W.2d 825; *Muldoon v. Trewhitt,* Tenn. Ch.App., 38 S.W. 109; *American National Bank & Trust Co. v. Mander,* 36 Tenn. App. 220, 253 S.W.2d 994.

Now regardless of whether the phrase "next of kin" is regarded as a technical expression or not when applied to land, the fact stands out glaringly that this phrase was used by the draftsman advisedly and that if the testatrix had intended this land to pass according to our statute of descent, the draftsman most certainly would have used the technical word "heir" or "heirs" or the like.

■ It is asserted in the brief in behalf of J. Albert Kimbrough, et al., on page 22 that the meaning of the words "heirs, or heirs at law, or next of kin" is to be determined by the nature of the property whether real or personal and in support thereof are cited *Alexander v. Wallace,* 1882, 76 Tenn. 569 and a number of cases are cited in the brief beginning with *Paine v. Gupton,* 1850, 30 Tenn. 402 and including the later cases of *Spofford v. Rose,* 1921, 145 Tenn. 583, 237 S.W. 68, and *Spencer v. Stanton,* 1959, 46 Tenn.App. 688, 338 S.W.2d 225.

That rule of construction, however, is not applicable where the evident intention of the testator is otherwise and this is made very clear from the statement in *Alexander v. Wallace,* supra, 76 Tenn. 572, wherein it is said:

"Like all other legal terms the word 'heir' or 'heirs', *when unexplained and uncontrolled by the context,* is usually interpreted according to its strict and technical

import, in which sense it designates the person or persons appointed by law to succeed to the real estate in case of intestacy. 2 Jar. on Wills, 61 (5th Am.Ed.)''.

And then the opinion very clearly states that an intention actually expressed, or to be gathered from the language used will prevail over the technical meaning of the word.

 Now that is exactly what we have in this case. The draftsman of this will, as heretofore said, must surely have known that the word ''heir'' is technically applied to real estate and that the ''next of kin'' is ordinarily applied to those who will take the personal property as being those nearest in degree of kin. And if the intention of the testatrix had been to let the land go to the ''heirs'' as such, or to let it go to the ''next of kin'' as the expression is used in our statute of distribution of personal property, it would have been so expressed in suitable language.

In 95 C.J.S. Wills sec. 682, p. 1007, with reference to the phrase ''next of kin'' the text states ''in some jurisdictions, in the absence of an intent to the contrary, a gift to next of kin is a gift to the nearest of kin in the strictest sense, meaning the nearest of blood relations, excluding persons who, under the statute of distribution, would be entitled to take representation * * *''. In note 59 is cited *Frank v. Frank,* 180 Tenn. 114, 172 S.W.2d 804. In that case it is said that the phrase has two meanings, first, the next or nearest in blood relationship computed according to the law of consanguinity, and, second, those persons entitled to the personal estate of the intestate under the statute of distribution. Further, that where there is nothing in the context to show a different intent,

the words "next of kin" must be given their ordinary meaning of relatives in blood, and that *when used in a will the term has not acquired any meaning other than that of nearest in blood relationship.* See, also, Phillips' Pritchard on Wills, sec. 438.

There is nothing in the will, however, to indicate the testatrix meant other than what is written in the will. In Item III, first paragraph, she states clearly in detail her intention; then recapitulates in the last paragraph in brief form. In the first paragraph referring to the issue of her children she provides for a per stirpes and not a per capita distribution by representation of each parent, thus showing the scrivener knew the difference between these terms.

In the second paragraph it was not necessary to specify either, because the law of descent would control.

In the third the failure to specify indicates the scrivener deemed specification unnecessary by use of the expression "next of kin", as will more fully appear in a moment.

A recent annotation in 32 A.L.R.2d 296, 303, on "next of kin" cites and discusses the leading English case and a substantial number of American cases, including the Massachusetts rule, as to the meaning of this or equivalent expressions. Owing to the customary use of same as relating to personal property and the use of "heirs" as commonly having reference to real estate, naturally most of those cases involve only the former although, for example, the Illinois case of *Hammond v. Myers*, 292 Ill. 270, 126 N.E. 537, 11 A.L.R. 315, does involve land.

Those cases appear in Sec. 5, p. 303. They hold to the rule that "next of kin" or the like in a will, nothing

appearing to indicate that a testator had a special or different meaning in mind, designates the nearest blood relations, according to the civil law computation, to the *propositus* in blood, rather than those who would share in his personal estate under the statute of distribution.

■ Or, as clearly expressed in some of the cases, "next of kin", *simpliciter,* means nearest in blood *simply as a matter of genealogy* and *without reference to any statute of descent or of distribution.*

Read *Williams v. Fulton,* 1954, 4 Ill.2d 524, 123 N.E.2d 495, 496, distinguishing *Hammond v. Myers,* supra. "To descend to his nearest of kin according to the rules of descent as declared by the statutes of the State of Illinois." (Land involved.)

The opposite view, that such expression means as provided by the statute of distribution, is presented in sec. 6 of the same annotation and represents the New York rule as developed in *New York Life Ins. & Trust Co. v. Winthrop,* 1923, 237 N.Y. 93, 142 N.E. 431, 31 A.L.R. 791, Cardozo, J., referred to in the brief of Bry-Block Company. This is also the view of the Restatement of Law, 3, Property sec. 307.

Also cited in behalf of Bry-Block Company is *American Nat. Bank v. Meaders,* 161 Tenn. 184, 30 S.W.2d 246. This case sheds no light on the question. The testator said "divide * * * equally between my *relatives* and her *relatives." Held,* relatives construed "next of kin" under the statute of distribution, because the term relative otherwise would include all kin to the remotest degree and be void for uncertainty.

*White v. Kane,* 178 Tenn. 469, 159 S.W.2d 92, does not support Bry-Block's proposition of law No. VI—"In

Tennessee a stirpital, rather than a per capita, construction is preferred wherever possible.'' The case construed the word ''issue'' in the lapsed devise statute to require a stirpital, rather than a per capita, distribution, because no testator using that word would suppose it meant dividing his estate equally among all of his descendants composed of several generations.

We think that the intention of the testator is evident from the face of the will itself and, therefore, the quotation in *Burton v. Kinney*, 191 Tenn. 1, 5, 231 S.W.2d 356, 358, 19 A.L.R.2d 366, where Rood on Wills is quoted, is as follows:

''If by the use of plain and unambiguous language, he has made his meaning clear and certain, his will expounds itself, and all the court can do is to give it effect. All doubts must be resolved in favor of his having meant just what he said. The courts have no right in such cases to resort to a fanciful or conjectural construction, grounded on the circumstances of his property, his family, or himself.''

Before closing this opinion it might be appropriate to say further that the Court of Appeals, in support of its conclusion that a study of the family relationships of 40 years ago made it unthinkable that the testatrix could have intended such a result as was reached by the Chancellor, referred to the third paragraph of Item III. It reasoned that, if in the first event the husband had become the owner of the fee *and had died intestate,* the land would have descended to his heirs; whereas under the second event it would have been distributed, according to the Chancellor's view, among the nearest in blood kin;

that the second event would be contrary to the testatrix's intended disposition.

Obviously, it is pure speculation as to whether the husband owning the fee-simple title would have died intestate, or if testate, who would have been his beneficiaries. The testatrix could and did control the future of the second situation, if it should ever have arisen, but she could not and did not attempt to control the first, but left it entirely up to her husband. Hence, it does not shed any light on the ultimate question of her intention *to assume* that it was that the beneficiaries would be the same in either of these future situations.

The action of the Court of Appeals in reading into this will an intention of the testatrix drawn from the family relationships which is not warranted by any expression in the will is similar to the effort made unsuccessfully in *Kimbrough v. Dickinson*, 1946, 247 Ala. 324, 24 So.2d 424.

We accordingly reverse the decree of the Court of Appeals and affirm the decree of the Chancellor. The cause is remanded for further proceedings.

TOMLINSON, BURNETT, and FELTS, JJ., concurring.

PREWITT, C. J., not participating.

### EXHIBIT A

"Last Will and Testament of
Mary Monroe Kimbrough.

"I, Mary Monroe Kimbrough, being of sound mind and disposing memory, but realizing the uncertainty of life, do make, publish and declare this as my last will and testament, hereby revoking any and all others heretofore made by me.

## "Item I.

"I desire to be buried in our family lot by the side of my mother, in Elmwood Cemetery, in Memphis, Tennessee.

## "Item II.

"All of my personal property of every kind or character whatsoever, and wheresoever situated, including cash on hand and in bank, stocks and bonds, household furniture, and personalty of every description, I give absolutely to my beloved husband, John F. Kimbrough.

"I also give, devise and bequeath to my said husband, in absolute fee simple forever, all of the unsold lots in the Mrs. Virginia Carr-Thomas Subdivision of Lot 9 of the A. B. Carr Tract, as said subdivision appears of record in Plat Book 4, page 114, of the Register's office of Shelby County, Tennessee.

## "Item III.

"I also devise and bequeath to my said husband, John F. Kimbrough, my farm in the 3rd Civil District, near Germantown, Shelby County, Tennessee, consisting of approximately five-hundred and twenty-three (523) acres; and also the building on the west side of Main Street, between Adams and Jefferson, in the 3rd Ward, in the City of Memphis, Shelby County, Tennessee, known as the middle store of the Clay Building, and now occupied by Bry-Block Mercantile Co.; and also my property situated at the corner of Carroll Avenue and High Street, in the City of Memphis, Shelby County, Tennessee, in the 8th ward thereof, and being parts of lots 13 and 14.—To have, hold, use and enjoy the same for and during his natural life only, and upon his death said

property shall go to my son, John F. Kimbrough, Jr. and my daughter, Virginia Kimbrough Conaway, share and share alike, for and during their natural lives only, and at their death to go to their issue, in absolute fee simple, such issue to take their deceased parent's share, per stirpes and not per capita.

"If either my son or daughter should die without issue surviving, then such child's share shall go to my surviving child, for life, as aforesaid, and at the death of such surviving child, to his or her issue, in fee simple, if any there be.

"If both of my children should die without issue before the death of my said husband, then and in that event only, the life estate hereby vested in my said husband, John F. Kimbrough, shall ripen into a fee simple estate, with full and absolute right on his part to hold, mortgage, sell and convey the same, free of all limitations-over, or restrictions whatsoever. Or if my said children should die without issue surviving either of them, after the death of my said husband, then I desire all of the property described in this paragraph, to go to the next of kin of my said husband, John F. Kimbrough.

"My intention is to give the property described herein to my husband, for his absolute use and enjoyment during his natural life, and at his death to be used and enjoyed by my two said children for their lives, and at their death to go to their issue, or to the issue of such one who may die leaving issue surviving, in fee simple. And in the event both of my said children should die without issue surviving, before my husband dies, then I wish said property to go absolutely to him in fee simple, and if

they both die without issue after my husband then to his next of kin.

## "Item IV.

"All of the rest and residue of my real estate, of every kind and character whatsoever, wheresoever the same may be situated, in this State or any other State or States, I devise and bequeath to my said husband, John F. Kimbrough, in trust, for the following uses and purposes, to-wit: He shall have full, complete and absolute authority to sell and convey, the same, or any part or parcel thereof, whenever and howsoever he may see fit, and at any price or prices he may desire, and otherwise deal with it in all respects just as if he owned the same in fee simple, vesting in the purchaser or purchasers from him an absolute title in fee simple, and may sell the same for cash, or on terms, or for exchange or trade, as his judgment may dictate. It shall be his duty, however, at such times as he may elect, to divide the net proceeds of such sales equally between himself and my said two children.

"If either of my children should die during the life of my husband, without issue surviving, then the net proceeds of such sale shall be equally divided between him and the survivor of my said children. If both of my said children should die without issue before the death of my said husband, then this trust shall cease and terminate, and said property shall become the absolute property of my said husband, freed of all limitations, restrictions or trusts whatsoever.

"But if either or both of my children should die with issue, during the life of my said husband, such issue shall receive their deceased parent's share of the net proceeds

derived from the sale of said property. This trust shall absolutely cease and terminate upon the death of my said husband, John F. Kimbrough, and all of the property held by him hereunder shall immediately go to my said son and daughter, if they be then living, in absolute fee simple. Or, if either of them shall have died leaving issue, then such issue shall represent their deceased parent, and receive in fee simple such parent's share. But if either of my said children shall have died without issue, then the survivor of them shall receive all of said trust property absolutely in fee simple.

"It shall not be necessary for my said husband to execute a bond as Trustee, nor shall he be accountable in any court or courts whatsoever, nor to my children or any one else, for his administration of this trust, nor shall it be necessary for any purchaser or purchasers from him, or any mortgagees or any beneficiaries in any deeds of trust he may execute to look to the disposition of the proceeds, but the status of such parties shall be as if they dealt with him individually and as the absolute owner in fee simple of said property. He may make such improvements thereon as he may desire, and handle the same unrestricted and unhampered, absolutely as his own.

## "Item V.

"All rights in my estate which may be received by my daughter hereunder, shall be to her sole and separate use, and free from the debts, contracts, control and marital rights of her present or any future husband, with the full and absolute right to deal with the same in all respects whatsoever as if she were an unmarried woman.

"Item VI.

"I hereby nominate and appoint my said husband, John F. Kimbrough, Executor, and ask that he be permitted to serve as such without bond, or without the necessity of filing any inventory or any accounting in any court or courts whatsoever.

"In Testimony Whereof, I have hereunto set my hand and seal, this the 22 day of January, 1918.

"Mary Monroe Kimbrough

"Signed, sealed, published and declared by Mary Monroe Kimbrough, wife of John F. Kimbrough, as her last will and testament, and in attestation thereof we have hereunto set our hands and seals at her special request and in her presence. This the 22nd day of January, 1918.

"William G. Thoman

M. Gollman

Robert E. Lee"

Opinion on Petition to Rehear

SWEPSTON, JUSTICE.

A petition to rehear has been filed in behalf of J. Albert Kimbrough, et al., in his group of claimants. The petition is a reargument of the same points fully discussed in the brief and fully considered by the Court in the study of the briefs and the authorities and for that reason does not comply with rules of the Court and must be overruled.

We hardly think it is a fair criticism of the opinion to say that it holds as a fact that the draftsman of the will was familiar with *Frank v. Frank* and other cases cited

in the opinion which were decided after the will was drawn. What we did say, however, was that the draftsman of the will was familiar with the fact that in this State the term "next of kin" ordinarily refers to personal property and heirs to real estate but that this rule of construction does not apply where the contrary intention appears from the will.

Then we pointed out that where the expression "next of kin" simpliciter is used it simply means those nearest in blood relationship without regard to any statute of distribution or of descent. The question was settled at the end of the 18th century in England in the case of *Withy v. Mangels,* 8 Eng.Rep. 724, 10 Clark and F. 215; 10 L.J.Chy.N.S. 391. Then in the annotation referred to in 32 A.L.R.2d 296, are listed the more recent cases which, if read, will disclose that for many years back in those respective states the English rule has been followed. It is, therefore, incredible that a skilled draftsman of a will in 1918 in preparing an item dealing solely with real estate was not familiar with the rule above stated. *Frank v. Frank* is simply a judicial statement of what the rule has always been considered to be in the majority of jurisdictions including Tennessee.

The petition is overruled.