# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 1, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| BOILER SUPPLY COMPANY, INC. | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Davidson Chancery |
| | ) | No. 93-2848-I |
| VS. | ) | |
| | ) | |
| LUNN REAL ESTATE INVESTMENTS, | ) | Appeal No. |
| INC., | ) | 01A01-9605-CH-00246 |
| | ) | |
| Defendant/Appellee. | ) | |

APPEAL FROM THE CHANCERY COURT
FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

For Plaintiff/Appellant:

Charles Patrick Flynn
Gerald D. Neenan
FLYNN AND NEENAN
Nashville, Tennessee

John B. Link, III
Nashville, Tennessee

For Defendant/Appellee:

Stephen H. Price
FARRIS, WARFIELD & KANADAY
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a dispute over the interpretation of a provision allocating the responsibility for paying legal expenses in the event of a default or breach of two leases. The lessee filed suit against the lessor in the Chancery Court for Davidson County seeking a declaration that the leases had expired and requesting its attorney's fees in accordance with the provisions of the lease agreements. The trial court granted the lessee's motion for summary judgment and declared that the leases had expired but denied the lessee's claim for legal expenses. The lessee has appealed. We have determined that the trial court correctly interpreted the lease agreements and, therefore, affirm the summary judgment.

## I.

Wallace Edward Lunn, Sr. established two businesses during his lifetime - Boiler Supply Company, Inc. and Lunn Real Estate Investments, Inc. Boiler Supply operated out of two industrial buildings in Nashville and Knoxville on property leased from Lunn Real Estate Investments. When Mr. Lunn died in 1978, the interests in the two businesses were divided among various family members. On January 1, 1989, Boiler Supply and Lunn Real Estate Investments entered into two new leases containing an ambiguous provision regarding their duration that stated on one hand that the term of the lease was for three years, but on the other provided that the lease would begin on January 1, 1989 and end on December 31, 1992 (a period of four years).[1]

Disputes among Mr. Lunn's family eventually caused them to redistribute their interests in the two corporations. In May 1990, the family agreed that Wallace Edward Lunn, Jr. would acquire all the stock in Boiler Supply that had been previously held by other family members and, in return, that he would relinquish his interests in the other assets in his father's estate, including Lunn Real Estate Investments. Part of this agreement included amendments to the 1989 leases

---

[1]The lease specifically provided:

> Lessor leases to Lessee, to have and to hold the same subject to all terms and conditions set forth herein for a term of three (3) years, beginning on the 1st day of January, 1989, and ending on the 31st day of December, 1992, unless sooner terminated as provided herein (hereinafter referred to as the "Term").

providing (1) that the leases could be extended following the end of their initial terms at Lunn Real Estate Investments' option, (2) that Boiler Supply could purchase the properties if Lunn decided to extend the leases, (3) that the purchase price for the properties, if Boiler Supply elected to purchase them, would be the greater of $200,000[2] or average appraised value of the properties,[3] and (4) that the leases would terminate in ninety days if Lunn Real Estate Investments rejected Boiler Supply's proposed contract to purchase the properties.

As the end of 1991 approached, Boiler Supply wrote Lunn Real Estate Investments to inquire whether it intended to extend the leases beyond their three-year term. Lunn Real Estate Investments responded that discussions concerning the extension of the leases were premature because the leases did not expire until December 31, 1992. On January 2, 1992, Boiler Supply formally notified Lunn Real Estate Investments that its three-year leases had expired and that it was holding over on a month-to-month basis under the leases' holdover clauses. Lunn again responded that the initial terms of the leases did not expire until December 31, 1992.

In May 1992, Boiler Supply offered to purchase the properties for $240,000. Lunn Real Estate Investments rejected the offer on the ground that it was premature. In December 1992, Boiler Supply again offered to purchase the properties, this time for $200,000. Lunn Real Estate Investments again declined Boiler Supply's offer and informed Boiler Supply that it had decided to extend the term of both leases. Thereafter, in March 1993, Boiler Supply again offered to purchase the properties. Both parties designated appraisers, but when Boiler Supply did not receive the results of Lunn Real Estate Investments's appraisal, it submitted an offer to purchase the properties for $221,500. Lunn Real Estate Investments rejected this offer, as it had the preceding two offers.

---

[2]The Nashville property was valued at $150,000; while the Knoxville property was valued at $50,000.

[3]The leases provided that the properties would be appraised by three appraisers, one chosen by Boiler Supply, one chosen by Lunn Real Estate Investments, and the third appointed by the other two appraisers.

In September 1993, Boiler Supply sued Lunn Real Estate Investments in the Chancery Court for Davidson County alleging that the leases had expired and that Lunn Real Estate Investments had not acted in good faith when it refused to turn over its appraisal information. Boiler Supply requested the trial court to construe the terms of the leases, to determine the rights of the parties, and to declare that the leases and their amendments were terminated. It also requested the trial court to award legal expenses pursuant to a provision in the leases.[4] Lunn Real Estate Investments responded to the complaint by asserting that Boiler Supply had failed to maintain the property in good condition and that the parties had been unable to agree whether the properties should be appraised "as is" or "as repaired." It also asserted that Boiler Supply's offers to purchase the property had not been timely.

In June 1995 Boiler Supply moved for a summary judgment based on its claims that the leases had expired because Lunn Real Estate Investments had failed to properly exercise its option to continue the leases past their original terms and had refused to accept its offers to purchase the property. At the hearing on the summary judgment motion, Lunn Real Estate Investments conceded that the original leases expired on December 31, 1991 and abandoned its claims that Boiler Supply had failed to maintain the property. On August 18, 1995, the trial court granted Boiler Supply a summary judgment and declared that the leases had terminated. When Boiler Supply pressed for its legal expenses, the trial court held that it was not entitled to its legal expenses because Lunn Real Estate Investments had not breached or defaulted during the original term of the leases. Boiler Supply filed this appeal after the trial court denied its motion to alter or amend its order granting the summary judgment.

**II.**

---

[4]The provision for legal expenses in the lease provided:

> If, on account of any breach or default by Lessor or Lessee of their obligations to any of the parties hereto, under the terms, covenants and conditions of this Lease, it shall become necessary for any of the parties hereto to employ an attorney to enforce or defend any of their rights or remedies hereunder, and should such party prevail, it shall be entitled to any reasonable attorneys' fees incurred in such connection.

Under the "American Rule" followed in Tennessee's courts, losing parties need not pay the legal expenses of prevailing parties unless required either by statute, contract, or some other recognized equitable ground. *See Kultura, Inc. v. Southern Leasing Corp.*, 923 S.W.2d 536, 540 (Tenn. 1996); *Kimbrough v. Union Planters Nat'l Bank*, 764 S.W.2d 203, 205 (Tenn. 1989). This appeal involves a contractual fee-shifting provision.

Contracting parties remain free to agree to allocate the responsibility to pay legal expenses caused by a breach in their contract. These agreements are subject to the normal canons of contract construction. Accordingly, courts must construe these agreements as written, *see Associated Press v. WGNS, Inc.*, 48 Tenn. App. 407, 417, 348 S.W.2d 507, 511-12 (1961), and must also give effect to the parties' intentions consistent with legal principles. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). We must also construe the agreement objectively without favoring either party, *see Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985), and we should ordinarily construe the language according to its technical legal meaning unless the parties have established some other meaning or unless the context in which the terms are used sensibly indicates some non-technical meaning. *See Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 191 (Tenn. 1973); *Fariss v. Bry-Block Co.*, 208 Tenn. 482, 487-89, 346 S.W.2d 705, 708 (1961).

Where a contract contains a provision allocating the responsibility for paying legal expenses, the obligation to pay legal expenses is limited to only those instances provided for in the contract. *See Chicago Southshore & S. Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 634 (Ind. Ct. App. 1995). Legal expenses cannot be recovered if the subject matter of the lawsuit is beyond the terms of the provision. *See Romero v. Hariri*, 911 P.2d 85, 94 (Haw. Ct. App. 1996).

The expense-shifting provision at issue on this appeal applies only to the necessary legal expenses incurred "on account of any breach or default by Lessor or Lessee of their obligations . . . under the terms, covenants and conditions of this Lease." Accordingly, in order to recover its legal expenses, Boiler Supply must not only be the prevailing party, but it must also demonstrate that it prevailed with regard to claims involving Lunn Real Estate Investments's breach or default of its

obligations under the leases. *See Houston v. Booher*, 647 N.E.2d 16, 22 (Ind. Ct. App. 1995); *Shull v. First Interstate Bank*, 887 P.2d 193, 196-97 (Mont. 1994).

Paragraph twenty-two of the leases defines the six events that constitute a default under these leases. Since each of these events involves conduct of the lessee, the contract contains no provision for default by the lessor. Accordingly, Boiler Supply will be entitled to recover its legal expenses from Lunn Real Estate Investments only if it was required to hire a lawyer to enforce or defend its rights under the leases because of Lunn Real Estate Investments' breach of the leases.

Boiler Supply argues that Lunn Real Estate Investments breached the leases in two ways: first, by not agreeing with its interpretation of the provision defining the term of the leases and second, by refusing to provide its appraiser's report concerning the value of the properties in Knoxville and Nashville. A good faith disagreement over the meaning of an ambiguous contractual provision does not constitute a breach of contract. Accordingly, Lunn Real Estate Investments was not contractually obligated to agree with Boiler Supply's interpretation of paragraph two of the leases and did not breach the leases by taking the plausible position that they did not expire until December 31, 1992, rather than on December 31, 1991 as insisted by Boiler Supply.

Under the 1990 amendment to the leases, Boiler Supply had the right to offer to purchase the properties only if Lunn Real Estate Investments effectively extended the leases indefinitely beyond their original terms. Since Lunn Real Estate Investments failed to extend the leases before their initial terms expired, Boiler Supply became a month-to-month tenant under the hold over provisions in the leases. As a hold over tenant, Boiler Supply did not have a contractual right to purchase either or both properties for the greater of $200,000 or the averaged appraised value of the two properties. Thus, the parties' negotiations concerning the property beginning in 1992 were not governed by the leases, and the parties were free to negotiate in any way they wished. Accordingly, Lunn Reality Investments had no contractual obligation to hire an appraiser or to furnish Boiler Supply an appraisal report during the negotiation process.

Even if Boiler Supply had a right to purchase the property under the 1990 amendment to the leases, Lunn Real Estate Investment's failure to turn over its

appraiser's report is still not a breach of contract. The amendment to the leases required the parties to ascertain the average assessed value of the properties based on three appraisals - one appraisal performed by appraisers chosen by the parties and the third appraisal by an appraiser appointed by the parties' two appraisers. While the parties apparently retained their own appraisers, their appraisers did not, at least insofar as this record shows, designate a third appraiser. The average appraised value of the properties could not be determined without this third appraisal, and without the third appraisal, Boiler Supply could not purchase the properties. Since Boiler Supply did not make an appropriate offer to purchase the properties, it cannot insist that Lunn Real Estate Investments breached the leases by failure to turn over its appraiser's report.

## III.

Boiler Supply's complaint against Lunn Real Estate Investments also undermines its claim for legal expenses. Tenn. R. Civ. P. 8.01 requires complaints to contain a short, plain statement showing that the plaintiff is entitled to relief and a demand for judgment for the particular relief sought. While courts have a duty to give effect to pleadings according to their substance rather than to their form, *Fann v. City of Fairview*, 905 S.W.2d 167, 175 n.14 (Tenn Ct. App. 1994), they cannot create claims that have not been pled. *See Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994).

Boiler Supply's complaint simply requested a declaration that its leases expired on December 31, 1991. It cannot now transmogrify its declaratory judgment complaint into one for breach of the leases. In a similar case, the Florida Court of Appeals held that a seller of property who filed a declaratory judgment action arising from an appraisal dispute with the buyer could not recover its legal expenses because it had not filed suit to enforce the contract against the buyer. *See Dade Sav. & Loan Ass'n v. Broks Ctr. Ltd.*, 529 So.2d 775, 776-77 (Fla. Dist. Ct. App. 1988). Boiler Supply's suit seeking a declaration that the leases had terminated was not an action to enforce its rights against breach or default by Lunn Real Estate Investments. Accordingly, the trial court properly refused to award Boiler Supply its legal expenses under the leases' expense-shifting provisions.

Boiler Supply's declaratory judgment complaint must be distinguished from Lunn Real Estate Investments' later detainer action filed to recover possession of the properties. Lunn Real Estate Investments filed this action when Boiler Supply breached the leases by failing to vacate the premises. This court affirmed the trial court's decision to award Lunn Real Estate Investments its legal expenses because the "lease contract provides for an award of attorney's fees in the event of a breach, if successfully litigated." *Lunn Real Estate Investments, Inc. v. Boiler Supply Co.*, No. 01A01-9704-CV-00191, 1998 WL 221112, at *__ (Tenn. Ct. App. May 6, 1998) (No Tenn. R. App. P. 11 application filed). Since Boiler Supply's action in this case did not arise out of a breach of the leases, our decision in Lunn Real Estate Investments' appeal does not control the outcome of this case.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Boiler Supply Company, Inc. and its surety for which execution, if necessary, may issue.


_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE