LOUIS A. BLACK, Appellee, v.
EDNA LINVILLE WASHAM et al., Appellee, v.
CLARENCE E. BLACKBURN, District Attorney General for Knox County, for and on behalf of the State of Tennessee, as defendant and cross-complainant, Appellant. No. 74.—421 S.W.(2d) 647.

Eastern Section. July 3, 1967.

Certiorari Denied by Supreme Court December 4, 1967.

W. Conway Garlington, Knoxville, for appellant.

Wayne Parkey, M. W. Egerton, Jr., H. O. Pollard, John A. Thomas, Charles D. Susano, Jr., Joe Guess, Charles A. Maner, Yancey & Butler, R. M. Vertrees, Knoxville, for appellees.

PARROTT, J. In this appeal from the chancery court the principal question to be determined is: Does the property of an adopted child, dying intestate without a surviving wife, child or blood kin, escheat to the State or pass to the collateral heirs of the adoptive parents? From the Chancellor's ruling and decreeing the property to the collateral heirs of the adoptive parents, the State has prayed this appeal.

The facts are uncontroverted. James Dudley Cassady was adopted by James E. Cassady and wife Laura on March 29, 1906. He was the only child of the marriage. Both of his adoptive parents predeceased him. James

Dudley Cassady, the adopted child, died on December 20, 1964, intestate without a surviving wife, child or known blood kin.

At the time of his death, James Dudley Cassady owned two tracts of real estate which were later sold for $106,500. Both tracts were acquired after his adoption. One was inherited from his adoptive mother and the other purchased on May 25, 1954.

The relatives of the adoptive parents who are parties to this suit consist of a sister of the adoptive father and some forty odd nephews, nieces, great-nephews and great-nieces of both the adoptive mother and father.

■ If any or all of these individuals have any right of inheritance or succession to the property in question, such privilege must be conferred by the statutes of adoption. This is true because our statutes of descent and distribution, except as to a surviving spouse, are based solely on blood kinship and follow the lines of consanguinity. T.C.A. sec. 31-101; Helms, Adm'r, v. Elliott, 89 Tenn. 446, 14 S.W. 930, 10 L.R.A. 535.

· ■ To resolve the questions presented requires a construction and interpretation of our adoption statute. Since the statutes have been amended through the years, it must first be decided which statutes in point of time govern. We think the Chancellor correctly held that those statutes in force at the time of death of intestate and not those in force at the time of adoption govern and control. See 52 A.L.R.2d 1228; 170 A.L.R. 742; 2 Am.Jur.2d, Adoption, sec 109; Franklin v. White, 263 Ala. 223, 82 So.2d 247; In re Williams, 154 Me. 88, 144 A.2d 116.

This brings us to T.C.A. sec. 36-126 which was in force at the time of the death of the intestate and provides:

"Effect of adoption on relationship.—The final order forthwith shall establish the relationship of parent and child between the petitioners and the child as if such child had been born to them in lawful wedlock, and from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property from the adoptive parents, and from other adopted children within the adoptive family, or from natural born children within the adoptive family in accordance with the statutes of descent and distribution, and such adopted children or natural born children to the adoptive parents shall inherit from him, but only property of the child acquired after his adoption. Also the adoptive parents shall be entitled to inherit from the adopted child both real and personal property acquired from relatives of the adoptive parents. It is the intent of this chapter to preclude all heirs of the adoptive child except those within the adoptive family, lineal descendants, or spouse, from sharing in any part of the estate of the adoptive parents or the estate of relatives of the adoptive parents."

In construing the adoption statutes our courts have held, without exception, that these statutes are subject to a strict construction. Our Supreme Court in Delamotte v. Stout, 207 Tenn. 406, 340 S.W.2d 894, said as follows:

"The right of adoption is not a natural right. It contravenes common right, was unknown to the common law and originated with the statute. Hence, it is well settled that our adoption statutes are in derogation of the common law and are, therefore, to be strictly construed."

■ In construing any statute one of the objectives is to find its true meaning and the intention of the legislature. It is not our prerogative to substitute our own ideas for the will of the legislature in order to bring about what we may consider justice, expediency or policy of the law.

In this case it is the theory of the claimants, and the Chancellor was of the same opinion, that by implication the words of the statute "the relationship of parent and child between the petitioners and the child as if such child had been born to them in lawful wedlock" granted to these collateral relatives of the adoptive parents the right of inheritance. We do not agree and think the question of inheritance is set by other words in the statute.

It must be noted that the remainder of the language of the statute deals entirely with the rights of inheritance of the adoptive family and the adopted child. This statute specifically sets out that the adopted child may inherit within the adoptive family but limits these rights to property of his adoptive parents and brothers and sisters whether natural-born or adopted. The adoptive parents are entitled to inherit from the adopted child only property the child acquired from relatives of the adoptive parents. The final sentence of the statute states the intent of the chapter is to preclude all heirs of the adopted child from sharing in any part of the estate of the adoptive parents or relatives except members of the adoptive family.

As we see these provisions, they are not only limitations on who may inherit but they make express provisions as to under what situations the adopted child or a member of the adoptive family may inherit from each

other. It is noticeable that nowhere within the language of this statute are any rights expressly given to collateral heirs of the adoptive family to inherit from the adopted child. Even the most literal and liberal interpretation of this statute does not permit unlimited inheritance by the adopted child from relatives of the adoptive family. Undoubtedly the same is true as to collateral heirs of the adoptive family inheriting from the adopted child.

One of the aids in determining the intention and purpose of a statute is to look at the legislative history. The first provision for adoption in this state was Chapter 338 of the Acts of 1851. This section conferred upon the person being adopted the capacity to inherit as an heir and next of kin to the adoptive parents. It expressly forbade the adopting parents any rights of inheritance from the person being adopted. This statute continued in force for nearly one hundred years.

In 1949 the legislature enlarged upon the section by permitting the adoptive parents to inherit from the adopted child "property acquired by the child after his adoption."

In 1951 the entire adoption law in Tennessee was rewritten. One of the changes made by the legislature deleted from the Act the right of adoptive parents to inherit any estate of the adopted child.

**In 1955 the Act was** amended so as to permit the adoptive parents to inherit from the adopted child after **acquired** property which had come from relatives of the adoptive parents.

In 1955 the present Act was enacted. However, the attorney general ruled this act unconstitutional because

of a defective caption. The 1957 legislature reenacted the section which is now T.C.A. sec. 36-126.

We have set out the history of this Act with its many amendments in an effort to show that the question of the right of inheritance of an adopted child and adoptive family has been given close attention by the legislature in the years past. It is only reasonable to conclude that the legislature was aware that collateral relatives could not inherit under the statute. Hence, it is reasonable to say they did not intend for collateral heirs of either the adopted child or adoptive family to inherit. If they had intended such, it could have easily been said in clear language.

We have not found any case in Tennessee which discusses the precise question of whether or not collateral heirs of an adoptive family may inherit from an adopted child. The briefs cite numerous cases from other jurisdictions. These cases are of little value because the statutes of each state differ.

Our courts have considered the question of whether an adopted child can inherit from the collateral relatives of its adoptive parents. These cases do give us some light on how the courts have construed the adoption statute in the past.

In the early case of Helms, Adm'r v. Elliott, supra, the court held the statutes of adoption made an adopted child the heir and next of kin of the adoptive parents but there was no such relation to the descendants of the adoptive parents. In this case the court denied the adopted child the right to inherit from the estate of his adoptive father's brother.

In Taylor v. Taylor, 162 Tenn. 482, 40 S.W.2d 393, a similar question was before the court. The court held that an adopted daughter does not inherit from the brother of an adoptive mother. In the court's opinion Helms, Adm'r v. Elliott was extensively quoted from, including the following: "As to the estates of other persons than the adopting parent, the law of adoption fixes no rights in the adopted child. It is only as to the adopting parent that the adopted child is made 'heir or next of kin' by the statute."

In the case of Fey v. Cato, 197 Tenn. 583, 276 S.W.2d 734, the court denied the adopted son any right of inheritance in the estate of a parent of his adoptive mother. The case cites and relies on Helms, Adm'r v. Elliott, supra; Taylor v. Taylor, supra, and states emphatically, "the laws relating to adoption in Tennessee, an adoptive child does not inherit from the collateral relatives of his adoptive parents."

The most recent case dealing with the question is Delamotte v. Stout, supra, in which T.C.A. sec. 36-126 was in force and considered by the court. In this case the child was adopted in Missouri where the statute confers upon an adopted child the same legal status as that of a natural child with the right to inherit from brothers and sisters of the adoptive parent. The adopted child sought to recover the entire estate of his deceased adoptive father's brother who died intestate. The court held since the property was in this state, the Tennessee statutes would govern the right of succession of the property. In this case the court again quoted with approval from and relied upon Taylor v. Taylor, supra; Helms, Adm'r v. Elliott, supra; and Fey v. Cato, supra, in denying the adopted child the right to inherit.

Although each of these cases deals with an adopted person inheriting from his adoptive relatives, which is the reverse of the instant case, it must be recognized that the courts have continuously held the act of adoption does not make the person adopted the "next of kin or heir" to the relatives of the adopting parents. It is clear from these decisions that all rights of the adopted child must come by virtue of the adoption statute. If the statute fails to convey a right, such as inheritance from relatives of the adopting parents, the adopted child will be treated as a stranger. The same reasoning must apply to collateral heirs of the adopting parents. It is our opinion T.C.A. sec. 36-126 fails to provide expressly or by implication that collateral heirs of an adoptive parent can inherit from an adopted child.

It results the decree of the Chancellor is reversed, the cross-bill filed on behalf of the State of Tennessee is sustained and the cause is remanded with a decree to be entered accordingly. The costs incident to this appeal are taxed against the funds which are in the hands of the Clerk and Master.

McAmis, P. J., and Cooper, J., concur.