IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 7, 2009 Session

## LINDA F. SEALS v. H & F, INC. ET AL.

**Rule 23 Certified Question of Law**
**United States District Court for the Middle District of Tennessee**
**No. 3:08-cv-01038     William J. Haynes, Jr., Judge**

**No. M2009-00330-SC-R23-CQ - Filed January 15, 2010**

WILLIAM C. KOCH, JR., J., concurring in part and dissenting in part.

This Court has accepted three questions certified by the United States District Court for the Middle District of Tennessee in accordance with Tenn. S. Ct. R. 23 that require us to determine how existing Tennessee law addresses certain questions involving the cremation of human remains. I regret that I am able to concur with the Court's answers to only the second and third questions. I cannot concur with the Court's answer to the first question because it overlooks that, by virtue of the definitive actions of the Tennessee General Assembly in 2000, the common-law right of sepulchre, recognized by this Court over eighty years ago, provides the basis for answering the question.

### I.

The first question certified by the United States District Court is as follows:

> Who has legal control over the disposition of the remains of a decedent when there is no surviving spouse? Specifically, with respect to the facts of this case, with whom is such control vested among a sole surviving parent of the decedent, a fiancé[1] of the decedent, and a fourteen-year-old minor child of the decedent?

I would answer this question by stating that control of the disposition of the remains of a decedent who has not made arrangements for the disposition of his or her own remains prior to death is currently governed by the common-law right of sepulchre as it has been

---

[1]Because the decedent in this case is a male, the term "fiancée" rather than "fiancé" is the appropriate descriptor.

recognized by Tennessee courts. In the absence of a surviving spouse, the authority to make decisions regarding the disposition of a decedent's remains rests with the decedent's "next of kin." The term "next of kin" refers to those persons who, according to the rules of consanguinity, are next or nearest in blood to the decedent. Based on these rules, a decedent's fourteen-year-old child may authorize the disposition of a parent's remains unless a court determines that the child lacks the capacity to make his or her own independent and considered decision. If the child is capable of making an independent and considered decision, the child's decision is entitled to preference over that of the decedent's surviving parents.

## A.

Death is a natural and inevitable part of life's journey. When death comes, our society, acting with compassion and respect, has long preferred to leave it to the decedent's family to make appropriate arrangements for the disposition of the decedent's remains. This respect is reflected in the common-law "right of sepulchre," which has been described as the "sacred and inherent right" of a decedent's family to the custody of a decedent's remains for disposition and undisturbed repose. *In re Widening of Beekman Street*, 4 Bradf. Sur. R. 503, 529 (Sur. Ct. of N.Y. County 1856).

Tennessee's courts have recognized this common-law right. Over one century ago, this Court noted that "[c]ivilized countries have always recognized and protected the sacred right to Christian burial[2] and to an undisturbed repose of the human body when buried." *Thompson v. State*, 105 Tenn. 177, 180, 58 S.W. 213, 213 (1900). In 1927, citing *Larson v. Chase*, 50 N.W. 238, 239 (Minn. 1891) with approval,[3] we stated that "the right to the possession of a dead body for the purposes of decent burial is vested in the surviving husband or wife or next of kin and that it is a right which the law will recognize and protect." *Hill v. Travelers Ins. Co.*, 154 Tenn. 295, 299, 294 S.W. 1097, 1098 (1927). As late as 1989, the Court of Appeals held that "[a]bsent an expressed desire of the deceased, the surviving spouse and, if no surviving spouse, the next of kin, has the right of custody and burial of the remains of the deceased." *Estes v. Woodlawn Mem'l Park, Inc.*, 780 S.W.2d 759, 762 (Tenn. Ct. App. 1989). The operation of the common-law right of sepulchre does not depend on the nature of the disposition of the decedent's remains. Thus, the right exists notwithstanding whether the decedent is buried or cremated.

---

[2]By citing Justice Caldwell's opinion in *Thompson v. State*, I do not endorse the notion that only "Christian" burials are sacred.

[3]The precise holding of the Minnesota Supreme Court was that "the right to the possession of a dead body for the purposes of decent burial belongs to those most intimately and closely connected with the deceased by domestic ties, and that this is a right which the law will recognize and protect." *Larson v. Chase*, 50 N.W. at 239.

In 1982, the Tennessee General Assembly enacted a statute confirming the enforceability of written designations of cremation.[4]  In the absence of the decedent's direction regarding the disposition of his or her remains, the statute identified and prioritized to whom the cremated remains should be delivered.  Tenn. Code Ann. § 62-5-501(b).  However, the statute did not address who, other than the decedent during his or her lifetime, could authorize the cremation of a decedent's remains.  Thus, it did not affect the common-law right of sepulchre.  The statute was repealed in 1999.[5]

In 1999, the Tennessee General Assembly enacted a detailed statutory scheme governing the disposition of a decedent's remains by cremation.[6]  One of these statutes – Tenn. Code Ann. § 62-5-503 – contained a hierarchical priority of the persons who were entitled to act as the "authorizing agent"[7] for the cremation of a dead human body.  While Tenn. Code Ann. § 62-5-503(a) identified and ranked nine classes of persons who were statutorily permitted to act as a decedent's authorizing agent, only three of these classes are relevant to the issues in this case.  These classes, in order of priority, were:

> (1)  The spouse of the decedent, at the time of the decedent's death;

> (2) The decedent's surviving adult children.  If the decedent is survived by more than one (1) adult child, any adult child of the decedent who states on the cremation authorization form that all the decedent's other adult children have been notified of the decedent's death and of the plans to cremate the

---

[4]Act of Mar. 25, 1982, ch. 703, 1982 Tenn. Pub. Acts 273, codified at Tenn. Code Ann. § 62-5-501 (Supp. 1983).

[5]Act of May 13, 1999, ch. 215, § 12, 1999 Tenn. Pub. Acts 469, 486.

[6]Act of May 13, 1999, ch. 215, 1999 Tenn. Pub. Acts 469, codified at Tenn. Code Ann. §§ 62-5-501 through -511 (Supp. 1999).  It is perhaps not coincidental that at the time the General Assembly enacted these statutes, the Cremation Association of America was circulating a draft Model Cremation Law containing many provisions similar to those found in Tennessee's statutes.  Cremation Ass'n of N. Am. Model Cremation Law and Explanation, http://www.cremationassociation.org/docs/model-cremation-law.pdf. This industry created model law "served as a basis for many state legislatures that wanted to enact legislation allowing constituents to designate cremation as the method of disposition." Tracie M. Kester, Note, *Uniform Acts – Can the Dead Hand Control the Dead Body?  The Case for a Uniform Bodily Remains Law*, 29 W. New Eng. L. Rev. 571, 582 (2007).

[7]Tenn. Code Ann. § 62-5-501(3) defined an "authorizing agent" as "the person or persons who are entitled to order the cremation of a decedent or body parts and to order the final disposition of the cremated remains of a decedent or body parts."

decedent and that none of them have expressed an objection to the cremation, may serve as the authorizing agent;

> (3) The decedent's surviving parent or, if the decedent was under eighteen (18) years of age at death, a surviving parent or the guardian or custodian of the decedent. If the decedent is survived by both parents, either of them may serve as the authorizing agent by stating on the authorization form that the other parent has been notified of the decedent's death and of the plans to cremate the decedent and that the other parent expressed no objection to the cremation.

When these new statutes became effective on July 1, 1999, they operated in conjunction with and displaced the common-law right of sepulchre only to the extent that they were inconsistent with the common law. The statutes had no effect on the common-law right of sepulchre in the context of burial. However, they governed the disposition of a decedent's remains by cremation. Thus, with regard to the priority of persons empowered to authorize cremation, Tenn. Code Ann. § 62-5-503(a)(1), like the common law, vested in the decedent's surviving spouse the prerogative to authorize cremation. In the absence of a surviving spouse, Tenn. Code Ann. § 62-5-503(a) provided additional specific priorities that differed from the common law.

The 1999 statutory priorities governing the persons permitted to authorize the cremation of human bodies lasted less than one year. In response to intense objections from the public,[8] the Tennessee General Assembly repealed them effective on May 22, 2000,[9] and left no other statute prioritizing the ability to authorize the disposition of a decedent's remains in their place.[10]

---

[8] Representative Howard Kerr, the House sponsor of the 2000 legislation, reminded his colleagues during the final consideration of the bill on March 20, 2000:

> Last year . . . we passed the law on cremation that did two things. It mandated a twenty-four hour delay after death of the individual before the body could be cremated, and second, it stipulated a sequence of survivors that could make decisions regarding the disposition of the body. You will recall that the public reactions against these provisions were very negative and very strong, and they asked us to do something about it.

[9] Act of May 11, 2000, ch. 779, 2000 Tenn. Pub. Acts 2231.

[10] The Uniform Anatomical Gift Act, which was first enacted in 1969, Act of Mar. 25, 1969, ch. 35, 1969 Tenn. Pub. Acts 62, and the revised Uniform Anatomical Gift Act, which was enacted in 2007, Act of May 29, 2007, ch. 428, 2007 Tenn. Pub. Acts 605, codified at Tenn. Code Ann. §§ 68-30-101 through -120 (Supp. 2009), are limited in their scope and, by their own terms, do not apply to the disposition of a

(continued...)

**B.**

The first issue posed by the United States District Court does not require this Court to construe any of the statutes governing the cremation of human bodies because these statutes no longer contain a hierarchical prioritization of the classes of persons who may authorize a cremation. Our only task with regard to the first issue is to ascertain the legal consequences of the General Assembly's decision in 2000 to repeal the priorities in Tenn. Code Ann. § 62-5-503(a). We are not required or empowered to parse the Tennessee Code Annotated for other statutes that might contain a workable framework for resolving this dispute.

Apart from the judiciary's prerogative to say what the Constitution of Tennessee means, decisions regarding the public policy of this state rest with the General Assembly. *Schneider v. City of Jackson*, 226 S.W.3d 332, 344 (Tenn. 2007); *Estrin v. Moss*, 221 Tenn. 657, 669, 430 S.W.2d 345, 350 (1968). This Court is not the forum where general public policy issues should be resolved, *Lavin v. Jordan*, 16 S.W.3d 362, 369 (Tenn. 2000), and thus this Court is "not free to establish what its members believe to be the best policy for the State." *Smith v. Gore*, 728 S.W.2d 738, 746 (Tenn. 1987). When we undertake to do so, we are usurping the constitutional prerogatives of the General Assembly. *Cavender v. Hewitt*, 145 Tenn. 471, 476, 239 S.W.2d 767, 768 (1921).

The common law provides one of the most reliable backgrounds upon which an analysis of the objects and purposes of legislative action may be determined. *See* 2B Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 50:1, at 163 (7th ed. 2008) (hereinafter "*Statutes and Statutory Construction*"). Accordingly, all statutes and legislative actions may be construed in light of the common law and the scheme of jurisprudence existing at the time of the legislative action. *Statutes and Statutory Construction* § 50:1, at 160.

The General Assembly is presumed to know the state of the existing law when it enacts legislation. *Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Investors, LP.*, 221 S.W.3d 506, 511-12 (Tenn. 2007); *State v. Hawk*, 170 S.W.3d 547, 552 (Tenn. 2005). This presumption includes the General Assembly's knowledge of the state of the common law when it enacts legislation. *Statutes and Statutory Construction* § 50:1, at 164. Thus, legislative acts are construed with reference to the common law and should not be construed to displace the common law any further than they expressly declare or necessarily imply. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002); *Harbison v. Briggs Bros. Paint Mfg. Co.*, 209 Tenn. 534, 546, 354 S.W.2d 464, 470 (1962);

---

[10](...continued)
decedent's remains. Tenn. Code Ann. § 68-30-103 states that these statutes apply only "to an anatomical gift or amendment to, revocation of, or refusal to make an anatomical gift."

*Nichols v. Atnip*, 844 S.W.2d 655, 659 (Tenn. Ct. App. 1992). To the extent that a legislative act does not supersede the common law, the common law continues in force. *Lively v. Am. Zinc Co. of Tenn.*, 137 Tenn. 261, 273, 191 S.W. 975, 978 (1917); *State v. Cooper*, 120 Tenn. 549, 553, 113 S.W. 1048, 1049 (1908).

## C.

Prior to 1999, the common-law right of sepulchre provided the principles that guided the courts when they were called upon to resolve disputes regarding the disposition of a decedent's remains. Rather than being rigid, these principles were conceived in equity and were sufficiently flexible to enable courts, when called upon, to consider each case based on its unique facts and to fashion an equitable remedy. *Estes v. Woodlawn Mem'l Park, Inc.*, 780 S.W.2d at 762.

In 1999, the General Assembly replaced these flexible common-law rules, at least insofar as they applied to cremation, with a more rigid set of rules and priorities. These statutes displaced the common law to the extent that they were inconsistent with the common law. However, less than one year later, the General Assembly repealed many of the statutes that it had enacted in 1999, including the statutes that dictated who had the authority to authorize the cremation of a decedent's remains. The repeal of the 1999 statutes had two legal effects. The first effect was to remove these statutes from Tennessee law and to treat them as if they had never existed, except with regard to transactions and other matters that arose and were completed while the statutes were in effect. *State v. Morris*, 136 Tenn. 157, 162, 189 S.W. 67, 68 (1916). The second legal effect of the repeal of the 1999 statutes was to revive the common law as it was before the enactment of the repealed 1999 statutes. *Statutes and Statutory Construction* § 50:1, at 165-67.

Unlike other states whose legislatures have enacted general statutory provisions governing the persons who may authorize the disposition of a decedent's remains,[11] Tennessee has never enacted broad statutory priorities regarding who may authorize the disposition of a decedent's remains. Thus, from and after May 22, 2000 – the effective date of the 2000 legislation repealing the 1999 statutes – the principles for determining the persons who could authorize the cremation of a decedent's remains are derived from the common-law right of sepulchre.

---

[11]*See, e.g.*, Ala. Code § 34-13-11 (2007); Colo. Rev. Stat. § 15-19-106 (2008); Ind. Code § 23–14-31-26 (Supp. 2009); Me. Rev. Stat. Ann. tit. 22, § 2843-A (Supp. 2009); Minn. Stat. § 149A.80 (Supp. 2009); S.C. Code Ann. § 32-8-320 (2007).

**D.**

The answer to the first issue posed by the United States District Court is found in Tennessee's version of the common-law right of sepulchre. Under the common law, a decedent's surviving spouse has primary authority to decide on the disposition of the decedent's remains. In the absence of a surviving spouse, the decision falls to the decedent's "next of kin."

The term "next of kin" has a well-defined and settled meaning. It means the next or nearest in blood following the line of consanguinity,[12] and those persons entitled to the estate of an intestate decedent under the laws distribution. *Fariss v. Bry-Block Co.*, 208 Tenn. 482, 489, 346 S.W.2d 705, 708 (Tenn. 1961); *Lakins v. Isley*, 200 Tenn. 353, 357, 292 S.W.2d 389, 391 (Tenn. 1956); *Black's Law Dictionary* 1070 (8th ed. 2004) (defining "next of kin" as "[t]he person or persons more closely related to a decedent by blood or affinity" and as "[a]n intestate's heirs – that is, the person or persons entitled to inherit personal property from a decedent who has not left a will."). Tennessee courts have long recognized that "[t]he strict legal meaning of the phrase 'next of kin' is 'next or nearest in blood.' In ascertaining who the next of kin is, the law follows the line of consanguinity. Such is the general rule of the common law. It is the same in this state under our general statute of distribution." *Helms v. Elliott*, 89 Tenn. 446, 450, 14 S.W. 930, 931 (Tenn. 1890); *see also*, *e.g.*, *Sneed v. Henderson*, 211 Tenn. 572, 576-77, 366 S.W.2d 758, 760 (1963); *In re Estate of Dobbins*, 987 S.W.2d 30, 36 (Tenn. Ct. App. 1998); *House v. Gibson*, 827 S.W.2d 310, 311-12 (Tenn. Ct. App. 1991). Tennessee's statutory laws of distribution and dissent, intestate succession, "follow the lines of consanguinity." *Union Planters Nat'l Bank v. Corbitt*, 474 S.W.2d 139, 143 (Tenn. Ct. App. 1971); *Black v. Washam*, 421 S.W.2d 647, 603 (Tenn. Ct. App. 1967).

In this regard, Tenn. Code Ann. § 31-2-104(b) (2007) states that when an intestate decedent has no surviving spouse, his or her estate passes as follows:

> (1) To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of unequal degree, then those of more remote degree take by representation;

> (2) If there is no surviving issue, to the decedent's parent or parents equally.

_____

[12]The term "consanguinity" is both a lay and technical term. Bryan A. Garner, *A Dictionary of Modern Legal Usage* 204 (2d ed. 1995). It connotes relationship by blood. *Tudor v. S. Trust Co.*, 193 Tenn. 331, 334, 246 S.W.2d 33, 34 (1952).

Even though the parents and the children of a decedent are both related to the decedent in the same degree, the children of the decedent have the preference. 2 Jack Robinson et al., *Pritchard on the Law of Wills and Administration of Estates* § 567, at 65 (6th ed. 2007).

Based on these principles, the decedent's fiancée does not have authority to decide on the disposition of his remains because she is neither a spouse nor related to the decedent by blood. Both the decedent's child and the decedent's mother are related to the decedent by blood and are related to the decedent in the first degree. However, between these two persons, Tenn. Code Ann. § 31-2-104(b) gives the preference to the decedent's child. Thus, applying the right of sepulchre, the decedent's child's right to decide upon the manner of the disposition of the decedent's remains is superior to that of the decedent's mother.

**E.**

The decedent's mother insists, however, that giving the decedent's fourteen-year-old child the responsibility to decide on the disposition of the decedent's remains would be absurd because the child is a minor. I find no basis in the common law or in the decisions of this Court to create a categorical rule that a minor child cannot under any circumstance decide on the disposition of a deceased parent's remains.

Tennessee courts have not addressed this question directly. However, this Court has recognized that "minors achieve varying degrees of maturity and responsibility (capacity)" and that "conditions in society have changed to the extent that maturity is now reached at earlier stages of growth than at the time the common law recognized the age of majority at 21 years." *Cardwell v. Bechtol*, 724 S.W.2d 739, 744-45 (Tenn. 1987). Based on this recognition, this Court has adopted the "mature minor exception" to the common-law rule requiring parental consent before a physician can treat a minor. Under this exception, this Court recognized a rebuttable presumption that persons between the ages of fourteen and eighteen have the capacity to make their own decisions and to authorize medical treatment without their parents' consent. *Cardwell v. Bechtol*, 724 S.W.2d at 749.

The same recognition that prompted this Court to recognize the "mature minor exception" has provided the Court of Appeals with the basis for concluding that minors have the capacity to consent to an abortion and to obtain birth control information and supplies without their parents' consent. *Roddy v. Volunteer Med. Clinic, Inc.*, 926 S.W.2d 572, 576 (Tenn. Ct. App. 1996) (capacity to consent to an abortion); *Decker v. Carroll Acad.*, No. 02A01-9709-CV-00242, 1999 WL 332705, at *14 (Tenn. Ct. App. May 26, 1999) (No Tenn. R. App. P. 11 application filed) (capacity to seek and obtain birth control information and supplies).

The General Assembly has also recognized that persons under the age of eighteen may have the capacity to make significant and important decisions and to engage in activities that

were traditionally viewed as adult activities. For example, children may begin working part-time when they are fourteen years old.[13] They may obtain a learner's permit to drive a motor vehicle when they are fifteen years old.[14] They may lease a safety deposit box.[15] They may marry if they are at least sixteen years old or at a younger age with judicial approval.[16] Minors may also obtain contraceptive advice and supplies,[17] consent to prenatal care,[18] seek judicial consent for an abortion,[19] and surrender a child for adoption.[20]

There are few reported opinions addressing application of the right of sepulchre to circumstances involving the capacity of minor children to make decisions regarding the disposition of the remains of a deceased parent. However, the opinion most on point concludes that minor children have the capacity to make these decisions. The case involved the death of a divorced father who had two daughters, fourteen and fifteen years old, who were living with their mother. The decedent's parents notified the daughters and the decedent's former wife of his death and received their authorization to make arrangements for his burial. Accordingly, the decedent's parents buried their son in Worcester, Massachusetts where they resided. *Stackhouse v. Todisco*, 346 N.E.2d 920, 921 (Mass. 1976).

Following the burial, the decedent's former wife filed suit on behalf of her two daughters seeking authorization to exhume the decedent's remains and bury them in Ashland, Massachusetts where she and the children resided. The trial court recognized the right of the decedent's daughters to decide on the location of their father's grave but determined that the decision to move the decedent's grave could be made only after one of the daughters reached majority. *Stackhouse v. Todisco*, 346 N.E.2d at 922. The decedent's former wife appealed on behalf of the daughters. The Supreme Judicial Court of Massachusetts held:

> In the absence of direction from the decedent, a surviving
> spouse, or, failing such a spouse (as here), then the decedent's

---

[13]Tenn. Code Ann. § 50-5-104 (2008).

[14]Tenn. Code Ann. § 55-50-311(a)(1) (2008).

[15]Tenn. Code Ann. § 45-2-904 (2007).

[16]Tenn. Code Ann. §§ 36-3-105(a), -107(a)(1)(A) (2005).

[17]Tenn. Code Ann. § 68-34-107 (2006).

[18]Tenn. Code Ann. § 63-6-223 (2004).

[19]Tenn. Code Ann. § 37-10-303(b) (Supp. 2009).

[20]Tenn. Code Ann. § 36-1-110(a) (2005).

next of kin, have a "possession" of the body so that they may dispose of it for burial according to their wishes. . . . The judge below recognized the right of the daughters as next of kin . . . and the guardian's only objection is that its effectuation was postponed to the attainment of age (which we take to be eighteen). We think that this was a sound precaution to ensure that the decision as to reburial is not merely that of the mother as guardian; but the judge is at liberty to authorize the removal of the body earlier if he satisfies himself of the genuineness of the daughters' desire.

*Stackhouse v. Todisco*, 346 N.E.2d at 922. Accordingly, the Supreme Judicial Court of Massachusetts recognized that the decedent's two minor daughters could decide where their father would be buried as long as the trial court was satisfied that the decision was theirs and not their mother's.

I reach the same conclusion as the Supreme Judicial Court of Massachusetts. Children of the age of fourteen or older may decide on the manner of the disposition of the remains of their deceased parent as long as they appear to have the capacity to make a decision of that import and as long as the decision is their own. Based on the "mature minor exception" recognized in *Cardwell v. Bechtol*, 724 S.W.2d at 749, I would recognize that a child fourteen years of age and older is presumed to have the capacity to decide on the disposition of a deceased parent's remains. However, this presumption is rebuttable and thus may be challenged in court. If the capacity of a minor child to decide on the disposition of his or her parent's remains is challenged, the question must be decided by the trier of fact. *See Wells v. McNutt*, 136 Tenn. 274, 277, 189 S.W. 365, 366 (1916).[21]

## II.

The second question certified by the United States District Court is as follows:

If the answer to Question #1 is such that the fourteen-year-old minor child has no legal control or has no superior or exclusive right of control over the disposition of the remains of his deceased parent, is such a child nonetheless an "heir" of the decedent as that term is used in § 62-5-511, *Tennessee Code Annotated*, such that an operator of a crematory facility acting without malicious purpose or bad faith, and not in a wanton or

---

[21]By the same token, if the capacity of an adult to make a decision regarding the disposition of a decedent's remains is challenged, the decision regarding the adult's capacity is a question of fact, not a question of law.

reckless manner, in cremating the remains of the decedent in accordance with the instructions set forth by the child is not liable for damages in a civil action for such cremation, as provided by the said statute?

I would answer this question by stating that a fourteen-year-old child, who has the capacity to make his or her own independent decisions, may make a decision regarding the disposition of his or her deceased parent's remains. I would further answer the question by stating that a fourteen-year-old child of a decedent is an "heir" of the decedent for the purpose of Tenn. Code Ann. § 62-5-511(a)(2) (2009).

## A.

This issue is separate and distinct from the first issue presented by the United States District Court. It involves the "safe harbor" provision for operators of crematory facilities that provides a defense against claims for civil damages in certain circumstances. The scope of the current safe harbor provision in Tenn. Code Ann. § 62-5-511(a)(2) can be elucidated by considering its history.

As part of the 1999 industry-backed legislation governing the disposition of a decedent's remains by cremation, the General Assembly included a provision that created a "safe harbor" for operators of crematory facilities whose conduct was not "made with malicious purpose, in bad faith, or in a wanton or reckless manner." In accordance with the original 1999 version of Tenn. Code Ann. § 62-5-511(a)(2), the operator of a crematory facility could not be held liable for damages in a civil action for

> [h]aving performed the cremation of the decedent . . . or having released or disposed of the cremated remains in accordance with the instructions set forth in the cremation authorization form executed in person by the person authorized to serve as the authorizing agent for the cremation of the decedent.

Tenn. Code Ann. § 62-5-511(a)(2) (Supp. 1999). In addition, Tenn. Code Ann. § 62-5-511(b)(1) insulated an operator of a crematory facility from civil damages for refusing to accept a dead human body or to perform a cremation when the operator "has actual knowledge that there is a dispute regarding the cremation of the decedent . . . and the operator has not received an order of the court having jurisdiction ordering the cremation of the decedent."

As of result of its decision in 2000 to repeal Tenn. Code Ann. § 62-5-503 regarding the priorities for persons who could serve as authorized agents, the General Assembly was required to rewrite the "safe harbor" provision in Tenn. Code Ann. § 62-5-511(a)(2).

Accordingly, it amended Tenn. Code Ann. § 62-5-511(a)(2), and the immunity from liability for civil damages now applies to crematory facility operators who have

> performed the cremation of the decedent . . . or [have] released or disposed of the cremated remains in accordance with the instructions set forth by the decedent or an heir or personal representative of the decedent.

The provision in the current version of Tenn. Code Ann. § 62-5-511(a)(2) applicable to "an heir or personal representative of the decedent" is far broader than the 1999 version of Tenn. Code Ann. § 62-5-511(a)(2). As it now reads, Tenn. Code Ann. § 62-5-511(a)(2) provides a safe harbor to operators of crematory facilities who perform a cremation in accordance with the directions of any person who is an heir or the personal representative of the decedent, even if that person is not the decedent's next of kin.

When a word in a statute has a well recognized common-law meaning, that meaning will be given to the word unless a different meaning is required based on the context in which the word appears or on the purpose of the statute. *Lively v. Am. Zinc Co. of Tenn.*, 137 Tenn. at 272-73, 191 S.W. at 978; *Scholze v. Scholze*, 2 Tenn. App. 80, 92, 1925 WL 1935, at *8 (1925). The technical meaning of the word "heirs" includes the class of persons appointed by law to succeed to a decedent's real estate in the case of intestacy. *Alexander v. Wallace*, 76 Tenn. 569, 572 (1881); *see also* Tenn. Code Ann. § 31-1-101(5) (2007). It has also been more broadly understood to mean the class of persons upon whom descent is cast by the statute of descent, including children and grandchildren. *Patterson v. Alexander*, 509 S.W.2d 834, 835 (Tenn. 1974).

Unlike the term "next of kin," the term "heirs" embodies a class of eligible persons. It does not inherently differentiate and prioritize among the class of persons who qualify as an "heir" of the decedent. Thus, a person who is an "heir" of the decedent may also be the decedent's next of kin.

When the General Assembly changes the language of a statute, judges must assume that the change was deliberate. *State v. Turner*, 193 S.W.3d 522, 527 (Tenn. 2006). They must also assume that the General Assembly means what it says. *State v. Goodman*, 90 S.W.3d 557, 564 (Tenn. 2002); *Worley v. Weigels, Inc.*, 919 S.W.2d 589, 593 (Tenn. 1996). I have concluded that the General Assembly deliberately chose to use the broad term "heir" rather than the narrower term "next of kin" in Tenn. Code Ann. § 62-5-511(a)(2) in order to provide operators of crematory facilities with the broadest possible safe harbor from civil damages.[22]

---

[22]During the Senate Commerce Committee's hearing on the legislation on March 20, 2000, Senator

(continued...)

The question as framed by the United States District Court presumes that the operator of the crematory facility was acting without malicious purpose or bad faith and was not acting in a wanton or reckless manner. Therefore, based on the limited facts provided by the United States District Court, I would answer the second question by stating simply that the decedent's fourteen-year-old child is both the decedent's next of kin for the purpose of the application of the common-law right of sepulchre and the decedent's heir for the purpose of Tenn. Code Ann. § 62-5-511(a)(2).

### III.

The third question certified by the United States District Court is as follows:

> Does the defendant funeral home, H & F, Inc., fall under the definition of a crematory facility for purposes of § 62-5-511, *Tennessee Code Annotated*, given its role in the disposition of the decedent's remains?

Based on the limited facts provided by the United States District Court, I concur with the Court's conclusion that Sellars Cremation Service, Inc. is an operator of a crematory facility and that H & F, Inc. is not.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[22](...continued)
Tim Burchett, one of the sponsors, stated that "[t]he amendment assures no liability to a cremation facility or funeral establishment for their disposition of the body." He also stated that the legislation

> deletes all references in the present law to any type of required cremation form, alternative container, and authorizing agent including section 62-5-503, which set up a priority of persons who could serve as an authorizing agent. That was just more of the bureaucracy that there was confusion over. So we just took that out. Remove the confusion.